SAM HOUSTON, President, etc., Appellant, vs. THE ADMINIS-TRATOR OF S. C. ROBERTSON, Appellee — Appeal from Travis County.

Where a party was required, under the mandate of this court, to perform certain acts in the district court:  *Held*, that when he proceeds to perform any of such acts, he should make it appear to the satisfaction of the court that he labors under no disability from any of the conditions imposed by the decree of the court upon the exercise of the power in the particular instance.

This is an appeal taken by the state from the decision of the district court, upon the following mandate of the supreme court made in this cause, at its last term, to wit:

"The State of Texas to the District Court of Travis County, Greeting: "

"Before our supreme court, on the eighth day of April, A. D. one thousand eight hundred and forty-eight, the cause, upon appeal to revise or reverse your judgment, between Sam Houston, president of the republic of Texas, appellant, and the administrator of Sterling C. Robertson, appellee, was determined; and therein our said supreme court made its order in these words:

"No. 147. This cause coming on to be heard on the transcript of the record of the court below, and the same being inspected and the argument of counsel heard, because it seems to the court here that the judgment of the court below was erroneous:  It is *ordered, adjudged and decreed* that the judgment of the court below be reversed; and the court here, proceeding to render such judgment as the court below should have entered, it is *ordered, adjudged and decreed* that the deceased intestate was entitled to receive, for his premium lands,

titles to fifteen leagues and twenty-three labors of land; that having received titles to a greater amount of leagues and labors than the said number, the appellee is now entitled to the first fifteen leagues, in the consecutive order of the dates at which the titles were issued to the said deceased, as empresario, and twenty-three labors out of the sixteenth league so deeded to the said empresario; and, should any of these sixteen leagues be located on lands to which titles had been previously issued by the former government, the appellee is entitled, to the extent to which such premium lands may be affected by such previous titles, to substitute, if he should be so advised, out of the leagues deeded to the intestate over and above the first sixteen leagues, an amount of land equal to the quantity of the premium lands so affected by such previous existing titles.

"This substitution to be permitted only in relation to such of the premium lands, claimed to have been affected by previously existing titles, as were not sold, alienated or otherwise disposed of by the deceased, in his lifetime, or by the appellee since his death. And it is further ordered, that this substitution shall take place according to the numerical order of the titles by their dates, commencing at the title which should be ranked as the seventeenth by its date, and progressing continuously in the successive order of the titles, by their dates, until a *quantum* of land is obtained equal in amount to the portion of the premium land affected by titles previously obtained.

"And it is further ordered, adjudged and decreed that the appellee do, within three months from this date, file in the office of the clerk of the district court of Travis county an abstract of the titles of the fifteen leagues and twenty-three labors to which he is entitled by this decree, to be selected in conformity with its rules and instructions; and if the same be comformable, in all respects, to the principles and rules by which such selection is directed to be made, the said court is authorized to confirm the said titles to the said appellee, as representative of the deceased, so far as to divest the state of all right or claim to the said lands, and the said lands are to be

holden on the conditions annexed to the premium lands of empresarios by the colonization law of the 24th of March, 1825. And if the said selection be not made by the appellee in three months from this date, and duly filed as above required, then the appellee is absolutely restricted to the first fifteen leagues and twenty-three labors granted to the empresario in the order of their dates; and it is further *ordered*, that the lands deeded to the deceased intestate, as empresario, and not forming a portion of the fifteen leagues and twenty-three labors adjudged by this decree as the amount of the premium lands to which the intestate was entitled, being vacant lands, and forming a portion of the public domain, the appellee is directed to produce in the district court for the county of Travis, at its next term, the titles for the same, that they may be cancelled.

"And it is further ordered, that this cause be remanded to the district court, for further proceedings in accordance with the instructions in this decree, and the appellee pay all costs," etc.

Under this mandate the administrator of S. C. Robertson made and submitted to the district court aforesaid his designations of the lands, etc.; and the said court, after causing the same to be amended in one particular, made and rendered, substantially, the following decree, to wit:

"In accordance with the decree and order of the supreme court, as appears to this court by the mandate returned and filed in this case, the foregoing designations and reports were returned by the proper representative of said estate, and after the inspection thereof, and after a full examination having been made in the general land office of all the records pertaining thereto, the court now hereby accepts and confirms the same, to wit:"

[Here follow the designations confirmed.]

"And the court hereby divests out of the state of Texas all the right, claim and title in and to the foregoing described tracts and parcels of land, and doth hereby vest the same in the legal representatives and heirs of him, said Sterling C. Robertson,

deceased. And that this decree shall be, and remain to them, a good and valid title from the state for said tracts of land as aforesaid.

"And in further compliance with said mandate and decree, the representative of said Robertson has filed in the district court aforesaid the other and remaining titles, not hereby confirmed, and which had issued to the said Sterling C. Robertson, deceased, to wit:"

[Here follows the list of titles surrendered.]

"And the said court now *adjudges* and *decrees* the said last named titles to be null and void, and all the right and title which may have passed to the said Sterling C. Robertson, in virtue thereof, be, and the same is hereby divested and revested in the state."

From this decree the attorney general prayed and took an appeal to this court.

The record presents the following statement of facts, to wit:

"The attorney general, on the part of Sam Houston, president, etc., having given notice in open court of his intention to appeal from the judgment and decree rendered herein by this court at its present term, and having entered the same of record; and the parties and their attorneys being unable to agree upon a statement of facts, and Barry Gillespie, Esq., the attorney for the representative aforesaid, having left the court, the judge, here presiding, proceeds to make out a statement of facts as the statute prescribes.

"The cause was submitted to the court by the plaintiff, before the arrival of the attorney general, upon the mandate of the supreme court, the schedule of selections made by the plaintiff, and the titles offered for cancellation. The papers were submitted to the commissioner of the general land office by the presiding judge, for that officer to inform the judge whether or not the selections, made by the plaintiff, were in conformity with the mandate of the supreme court so far as relates to the dates of the titles, and the conflict of those rejected, as covered with older claims. The commissioner of the general land

office informed the judge that the selections were in conformity with the mandate, with the exception of one selection (on Elm creek), and being satisfied, from the inspection of the map presented by the commissioner, that the plaintiff had no right to select a part of a survey or title, required him to take the whole survey of four leagues, notwithstanding the old survey conflicting, or float entirely off said survey. The plaintiff then elected to float off that survey, and selected the next titles, which are certified by the commissioner of the general land office to be the next in point of time.

"The foregoing, together with the decree rendered at this term, constitute a correct and exact statement of all the facts which were before the court.

"Given under my hand and seal during the term of court aforesaid.

(Signed)                    "WILLIAM E. JONES, [Seal.]
                                      "District Judge."

"P. S.—John W. Harris, the attorney general, on the part of Sam Houston, president, etc., and Barry Gillespie, Esq., on the part of the representative of Sterling C. Robertson, agreed in open court at the term aforesaid, that all the records in the general land office pertaining to the designations and report, in the said decree mentioned and referred to, and together with all the titles not confirmed, but annulled by said decree, which said titles are filed in the clerk's office of this court, shall be referred to by the supreme court as a part of the above statement; which I, this the 26th day of October, 1848, and during the term aforesaid, certify under my hand and seal.

(Signed)                    "W. E. JONES, [L. S.]
                                      "District Judge."

HARRIS, Attorney General, for appellant.

We contend that the decision of this court, at its last term, as the mandate and the opinion show, condemned no specific lands, passed no titles to the appellee; nor did it establish, nor intend to establish, the existence of a single deed for any of the lands which have been subsequently designated. It cannot be

said to have established the existence of any deeds for any lands at all. The reverse is plainly deducible, not only from the issues which were before this court, but also from the terms of both the mandate and the opinion; for it will be borne in mind, that when the cause was last in this court, it came on to be heard " on the transcript of the record of the court below," as the mandate shows, and as the law requires. There is nothing in the ISSUES, or in any part of the PLEADINGS of that transcript, which shows that a single deed or title had ever been executed in favor of S. C. Robertson, the intestate, as empresario. No legitimate question of the kind could then have arisen; which is a convincing argument to show that such a question could not have been decided. Then, since these deeds were not contained by the issues, or even mentioned in the pleadings, and since that is given as one of the reasons (and surely it is a good one) why this court did not make "a final and an absolute, and not a contingent, disposition of the controversy " at its last term, it ought not to be now contended that the decision established the existence of any such titles or deeds. When, as the opinion says, and the transcript shows, these deeds were not embraced by the issues, and were not drawn into the controversy upon the original trial of the cause in the district court, could it have been intended, by this court (which is one of appellate jurisdiction only), that *it* should take original jurisdiction of these important *questions of fact;* and that its decision, in the absence of all proof, should establish the existence and validity of such deeds? We think it might be safely assumed that deeds involving such a vast amount of property — deeds which had never been drawn into controversy — the existence of which had never been proven — deeds which, from all that appears in the transcript, had never been seen, were not, under such circumstances, intended to be established as valid by the decision of this court at its last term. Would an *appellate court*, of its own motion, and for the first time, raise such questions of *fact*, and decide them in the absence of all proof? If it would not (of which there can be but little question), then the execution or existence of these

deeds has never yet been established by any decision of this court. Then, up to that time, we contend that they had never been established at all.

Now, we trust it has been satisfactorily shown, that, up to the period when the cause was remanded, there existed no proof of the execution or existence of the deeds under which the designations are claimed to have been made; and we contend that this proof was not made when the cause was last before the judge of the district court; for the *statement of facts clearly shows* that when the cause was before the judge of that court, no witness was there introduced to prove their existence, which would have been far less than their execution. Then it does not appear that they have been established in any court, or on any occasion, or that they have ever yet been seen.

Let us give an especial attention to the action, which was recently taken before the judge of the district court, with a view of ascertaining whether the proceedings which were there had conformed to the rules prescribed by the mandate; for it will doubtless be conceded that the decision, and the mandate of this court, is the law of this cause. And if, upon examination, we arrive at the conclusion that the decision of the judge of the district court was attained by an observance of the rules prescribed by the mandate, and by the opinion of this court, then we submit that the judgment should be affirmed; if, however, it should be found to be otherwise, then, it is most respectfully contended, that it ought to be reversed.

We will, in the first instance, give attention to the designations which were made and confirmed by the judge of the district court, with a view of seeing whether these proceedings are such as were contemplated by the decision of this court.

The first designation is for one league of land on the west bank of the Brazos river, above and adjoining the one known as the Tenostitlan league. It is bound by certain courses and distances in the designation mentioned.

It is apparent, from mere inspection, that this designation is not regularly made; for it does not state that the intestate had any title to this league of land. The mandate requires that

" the appellee shall, within three months, file with the clerk of the district court, etc., an abstract of the titles to the fifteen leagues and twenty-three labors." And it then adds, " if the same be conformable, *in all respects*, to the principles and rules by which such selection is directed to be made, the district court is authorized to confirm the said titles to the said appellee, so far as to divest the state of all claims to the said lands," etc.

This designation, we submit, is conformable, in *no respect*, to the mandate. There is no date given, so as to allege or to show whether the first land that was deeded was designated. No deed was produced to show its date, and no date was proven. Then, in order to arrive at the conclusion that this designation was regular, we must *assume* that a deed for this league existed; that it is sufficient in form and substance to convey a title to the land; that it was executed as the law requires, and that it was one of the *first* fifteen leagues which was deeded to the intestate; for in no court has one of these important facts yet been proven.

The second is for five leagues on the east bank of the river Brazos, about fifteen miles below the falls, with the courses and distances that include them; and the designation says that this tract was deeded on the 27th day of February, 1835, and that the deed is on file in the general land office, page 384.

This is referred to in the original transcript of the record, in the certificate of Thomas Wm. Ward, then the commissioner of the general land office, as being of record in that office; but the same certificate and testimony show that this supposed deed "was not signed by the commissioner." Then, according to the decision of this court, it was not a deed, and conveyed no title at all. [See the case of Jones *vs.* Menard, Texas Reports, 771.] The laws of Coahuila and Texas required the commissioner to sign the deed. [See p. 73.] Then this designation could not, we submit, have been made according to the requisitions of the mandate, and, therefore, should not have been confirmed by the judge of the district court. The existence of this deed was not proven, and doubtless could

not have been.   Indeed, it may be said to have been dis-
proved.

The third is for one league in Burleson county, with its
boundaries given, said to have been deeded on the 18th day of
March, 1835; but the existence of the deed was not proven,
and, from all that appears in the transcript, may never have
existed.   Had a paper, purporting to be such a deed, been on
file in the general land office, that would not have been suffi-
cient testimony to establish it as a deed; for such instruments
can be there filed without proving their execution.

The fourth is one league adjoining and above the last.   It is
said to have been deeded on the same day.   To this, the same
objections would equally apply.

The fifth is one league adjoining the last, its boundaries
given, and is said to have been deeded on the same day.   To
this, also, the same objections may be taken.

Seventh, two leagues at the mouth of Brushy, boundaries
given, said to have been deeded the 25th of April, 1835.
There is no proof of its existence.

Eighth, one league above the Waco village, boundaries given,
said to have been deeded 2d of July, 1835.   Its existence in
no way proven.

Ninth, one league on the Brazos, said to have been deeded
1st July, 1835.

Tenth, one league above the Waco village, deed 1st July,
1835.

Eleventh, one labor, deeded 12th July, 1835.

Twelfth, one league, dated 2d July, 1835.

Thirteenth, twenty-two labors, deed same date.

To the two last designations, the commissioner of the gen-
eral land office affixed a certificate, stating that the field notes
are correct translations from the deeds next in order of their
dates, after the four leagues on Elm creek, on file in this office,
in the name of Sterling C. Robertson, as premium lands.

This is a certificate which applies only to the field notes of
the two last designations, viz.: one league and twenty-two
labors; and it adds that these field notes are correct transla-

tions from the deeds next in order of their dates after the four leagues on Elm creek, on file in his office. There is nothing in the certificate (except that the commissioner has called them deeds) to show that the instruments referred to, in form or substance, amounted to deeds. And since their execution was not proven when they were filed in the land office, there is nothing to show that they have ever been executed. And had this been done, the certificate would not be sufficient, because it was of a *part* only of the instruments, while he should have certified the whole, to let the court, in place of himself, judge of their sufficiency. It does not state the dates of the deeds on Elm creek so as to show that these are the " next in order."

Upon these designations, the judge of the district court made an order to the following effect: " In accordance with the decision and order of the supreme court, as appears to this court, by the mandate returned and filed in this case, the foregoing designations and reports were returned by the proper representative of the said estate; and after the inspection thereof, and after a full examination having been made in the general land office, of all the records pertaining thereto, the court now, hereby, accepts and confirms the designations," from one to thirteen, inclusive. This order makes an abstract of the designations; it gives their numbers, etc., etc.; and it may be remarked, that the judgment of the judge of the district court is for twenty-four labors more than the designations, or the judgment of this court. This is clearly an error.

The judge in his decree "divests out of the state of Texas all the right, claim and title in and to the foregoing tracts and parcels of land, and doth hereby vest the same in the legal representatives and heirs of him, the said Sterling C. Robertson, deceased.

" And this decree shall be and remain a good and valid title from the state for said tracts of land as aforesaid."

At the same time the representative produced deeds for sixteen leagues and one labor of land to be cancelled, which were ordered to be cancelled accordingly.

We contend that the judgment rendered by the judge of

the district court confirming these designations was erroneous, because it was given upon insufficient testimony. It will be seen by the mandate that the appellee was permitted to designate only the lands to which the intestate had titles, and the designations were to be made "in the order of the dates at which these titles were issued," etc. The opinion and mandate both show that he was not permitted to designate lands for which the intestate had no titles. And we trust it has been already established that the appellee has proven the existence of no titles or deeds to these designated lands. And it may be asked what else can be inferred from the opinion and mandate of this court, but that such proof must have been made? If the judge of the district court could have confirmed designations under deeds or titles, in the entire absence of all proof that such deeds or titles ever existed, why could not this court have done the same thing? And if so, why the necessity of remanding the cause to the district court for "further proceedings?" The answer to all this is contained in the opinion itself, which says that the subject matter was not embraced by the issue, and " that the evidence was *insufficient.*" If the evidence was "insufficient" here, it must have been insufficient in the district court, for it is most respectfully contended that the statement of facts shows that no additional testimony was there introduced.

But it may be adversely contended that the certificate of Thomas William Ward, the commissioner, etc., which is contained in the original transcript, shows that the intestate had a sufficient number of titles out of which the appellee could make his designations. And that it was not necessary for the judge of the district court to go beyond the record for the purposes of information or testimony.

In answer to this, we say that it will be seen by reference to the transcript that no more than eight leagues and one labor of the lands which could have been referred to in the certificate of the former commissioner are included in the designation. And if that certificate be relied on as sufficient testimony to support the judgment, then we contend that it is

inadequate to do so: 1st. Because when we compare the designations with it, we see that seven leagues and twenty-two labors were not contained by the certificate. 2d. Because the certificate shows that the intestate had no title or deed to five of the leagues which were included in the designations and the judgment; for the certificate shows that the instrument supposed to be a deed for them, was "not signed by the commissioner." Such an instrument this court at its last term decided is not a deed, and is null and void. [See the case of Jones vs. Menard, Texas Reports, 778.] The laws of Coahuila and Texas also require it. [See page 73.]

And had we neither of the above authorities, still it would be too plain for argument that an instrument of the kind could not, till signed, amount to a deed in contemplation of law. And that it consequently could have conveyed no title, is a position which under no circumstances would need the support of authority.

If this be true, then the judgment of the district court in regard to these designations, with the exception of three leagues and one labor, is sustained by no testimony, and these only by an indefinite certificate, which leaves the mind in doubt whether it is sufficient to identify even the three leagues and the one labor.

It is further respectfully contended that the judgment of the district court should be reversed upon the statement of facts contained in the transcript of the record. This shows that the cause was submitted to the judge of the district court by the plaintiff, ex parte, "upon the mandate of this court, the schedule of selections made by the plaintiff, and upon the titles offered for cancellation." Now the question may be here asked, does this constitute any testimony in addition to what had been before this court on the former occasion? Most unquestionably it does not. Then if it was "insufficient" in this court, it must have been insufficient in that also.

The statement of facts not only shows that there was no testimony before the judge of the district court, where these proceedings were had, but it also shows that the entire cause

25

was submitted to the commissioner of the general land office; and that the decision and judgment of that officer were made the judgment of the district court. This was clearly erroneous.

It will be also seen by reference to the original transcript, and the deeds returned to the district court to be cancelled, that seven leagues of older dates were pretermitted by the appellee, and that he, to the same extent, designated lands claimed to be held by junior titles. And though these deeds of older dates have been pretermitted, the appellee has neither proven nor attempted to prove by legal testimony, that the titles of the intestate conflicted with older titles. Was it intended by the mandate of this court that the appellee might merely allege the existence of such a conflict, and that this alone would be sufficient to authorize him to designate lands claimed to be held by junior titles; and that this would be sufficient to authorize the court to confirm such designations, and divest the state of all interest in the lands? Was it intended to dispense with all testimony to establish the existence of such affirmative allegations on his part? If we give to the decision and the mandate that interpretation, how easy would it be to elude every guard which this court has endeavored to throw around the rights and the interests of the state. Under such a construction, the appellee could have *alleged* that the first half of these lands conflicted with older titles; he could have sold or *located* that half, and could then have designated the other. And under such circumstances, the judgment of the district court, and of this court, confirming such designations, would divest the state of all title to the lands and forever conclude its rights.

The opinion and the mandate abundantly show that it was the intention of this court to go farther than merely to guard the rights of the state. It was with much justice intended to protect the interests of those third parties who may have become the owners of portions of these premium lands. For the mandate expressly provides that the right of substitution shall not be permitted to extend to such premium lands as were "sold, alienated, or otherwise disposed of by the deceased in

his lifetime, or by the appellee since his death." And should not this have placed upon the appellee, at least the burthen of proving that the lands pretermitted by him did not appear to be alienated by the records of the recorder's offices, of those counties in which these lands were respectively situated? Were this not required, it is obvious that those who may be the holders of these lands, who were strangers to the whole proceedings, might, by the judgment of this court, be deprived of their property and their homes, however fairly purchased and however honestly paid for. The injustice of this becomes obvious when we remember that their titles, as the opinion shows, were never involved in the subject matter of this controversy. It would be repugnant to the plainest principles of our law to condemn the rights of an innocent purchaser, whose rights had never been involved in the original controversy, and of one, too, who had never been heard, or cited to be heard. [See Toller *et al. vs.* Ayres, Texas Reports, 398.] And this position becomes more prominent when it is remembered that some of these designations were changed at the moment of the trial, when such adverse claimants, if they existed, could not have known the fact in time to protect their rights.

But there is another error in this cause, which, we submit, would, of itself, be sufficient to reverse the judgment of the district court. The mandate says that none of the first sixteen leagues shall be permitted unless the location of the empresario was " on lands to which *titles* had been previously issued by the former government." In such case " the appellee is entitled, to the extent to which such premium land may be affected by such *previous titles*, to substitute, if he should be so advised, out of the leagues deeded to the intestate, over and above the first sixteen leagues, an amount of land equal to the quantity of the premium lands so affected by *such previous existing titles.*" The statement of facts shows that the papers were, by the judge, submitted to the commissioner, etc., for that officer to inform the judge " whether the selections made by the plaintiff were in conformity with the mandate of the supreme court, so far as relates to the dates of the titles, and

*the conflict of those rejected as covered with older claims.''*
The commissioner and the judge did not then consider, whether
to the lands pretermitted there were *"previous titles,"* but
whether they were *" covered with older claims.''* A *title* con-
stitutes the highest *right* which one can have to property; a
claim may constitute the lowest pretense of right known to the
law. Blackstone defines a title to be " the means whereby the
owner of lands has the just possession of his property. [2
Comm. c. 13.] Justinian says, *"titulus est justa causa pos-
sidendi quod nostrum est;"* which does not materially differ
from the above definition; and Lord Coke says, the words
" demand or claim" are the most comprehensive words
known to the law. [Com, sec. 58, p. 291.] So that the ques-
tion as to whether there were *previous titles*, was not consid-
ered; nor was the question as to whether there were *older
claims* (which was mistaken for it), ever judicially tried.

GILLESPIE for appellee.[1]

Mr. Chief Justice ·HEMPHILL delivered the opinion of the
court.

We are of opinion that the court erred in requiring or per-
mitting the appellee so to amend his designations as not to
include the league and twenty-two labors on Elm creek and
north of Little river, a part of a four league survey, and desig-
nated in the original report or selection of appellee as No. 6.

This decision of the court was placed upon the ground that
the party could not select a portion of the four leagues, but
must take all or none. This is, we think, wrong, and the decree
should be reformed in this particular, if there be no other ob-
jection to the designation than the one referred to in the
decree.

We are also of opinion that the court erred in not requiring
the appellee to produce some evidence, which would show, *pri-
ma facie*, that the portion of the premium leagues, pretermit-
ted in his selections, had not been sold, alienated, or otherwise
disposed of by the deceased in his lifetime, or by the appellee

---

[1] NOTE.— The Reporter has been unable to procure a copy of Col. Gillespie's
brief.

since his death. The mandate evidently intends, as far as possible, consistently with equitable principles, that the appellee shall be limited to the first fifteen leagues and twenty-three labors, in the consecutive order of the dates of the titles. This order of selection is to be violated only where the empresario's deed conflicts with a previously existing title; and not then, if the land had been disposed of by the intestate in his lifetime, or his representatives since his death. This is a qualification of his right to pretermit lands affected by previous titles, and when he attempts the exercise of the right, he should show that this restrictive condition does not attach.

It would seem to be incumbent upon the appellee, when he proceeds to perform any act under the mandate, to make it appear to the satisfaction of the court that he labors under no disability from any of the conditions imposed by the decree of the court upon the exercise of power in the particular instance.

What amount or character of evidence should be required it is not necessary precisely to define. It would seem that the affidavit of the party would be, *prima facie*, sufficient to justify the court in authorizing the substitution; or a certificate from the recorder of titles in the counties where the lands have been or are now situated (if there have been any subdivisions of the original county), that no conveyance or transfer of such lands appears of record in his office, would be still more satisfactory evidence, and upon which the court could act with more assured confidence that the mandate would be executed according to its terms, and in accordance with its true spirit and meaning.

I do not perceive any very important objection to the action of the court in other particulars, in which it has been alleged to be erroneous. It was, perhaps, irregular for the court to act wholly upon information derived from the commissioner of the general land office, though his own investigations, or such as he may direct to be made, must be greatly aided by information imparted from that officer, and obtained from the records of the office.

It is ordered, adjudged and decreed that the judgment be reversed, and the cause remanded for a new trial.